# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ORIX PUBLIC FINANCE, LLC,

              Plaintiff,          **MEMORANDUM OF LAW & ORDER**

v.                            Civil File No. 11-3261 (MJD/LIB)

LAKE COUNTY HOUSING
AND REDEVELOPMENT
AUTHORITY, MINNESOTA
and LAKE COUNTY,
MINNESOTA

              Defendants.

Michael A. Rosow and Justin H. Jenkins, Winthrop & Weinstine, P.A., Counsel for Plaintiff.

Walter Benjamin Winger, Kenneth H. Bayliss, and Cally R. Kjellberg, Quinlivan & Hughes, P.A., Counsel for Defendants.

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss.  [Docket No. 28]  The Court heard oral argument on August 1, 2012.  For the reasons that follow, the Court denies the motion to dismiss.

## II.    BACKGROUND

### A.    Factual Background

### 1.    The Parties

Plaintiff ORIX Public Finance, LLC ("ORIX") is a Delaware limited liability company.  Its primary place of business is in Dallas, Texas.  (First Amended Complaint ("FAC") ¶ 1.)

Defendant Lake County Housing and Redevelopment Authority, Minnesota ("LCHRA") is a governmental entity located in Two Harbors, Minnesota.  (FAC ¶ 2.)

Defendant Lake County, Minnesota ("LCM") is also a governmental entity located in Two Harbors, Minnesota.  (FAC ¶ 3.)

### 2.    The Lake County Fiber-Optic Telecommunications Project

On December 21, 2010, Plaintiff ORIX and Defendants LCHRA and LCM (collectively, "Lake County") entered into a Bond Purchase Agreement.  (FAC ¶ 12.)  Plaintiff agreed to purchase bonds in order to help fund the Lake County Fiber-Optic Telecommunications Project.  (FAC ¶ 7.)  The project was intended to provide high-speed telecommunications, internet, and video services to residents and businesses in Lake County, Minnesota and eastern Saint Louis County, Minnesota.  (Id.)

The Federal Government, through the Rural Utility Service ("RUS") was to fund most of the project with funds in the form of grants and loans.  (FAC ¶¶ 8-9.)  In the Bond Purchase Agreement, Plaintiff agreed to purchase bonds issued by LCHRA to help LCM cover costs RUS would not fund.  (Id. ¶¶ 15, 18.)  The Bond Purchase Agreement was approved during a special meeting of the Lake County Board of Commissioners.  (Id. ¶ 13.)

### 3.    The Bond Purchase Agreement

The Bond Purchase Agreement, dated December 21, 2010 provided that Defendants would finance the Lake County Fiber-Optic Telecommunications Project using funds from three sources: (i) a loan from RUS not to exceed $56,413,705; (ii) a grant from RUS not to exceed $9,955,359; and (iii) local matching funds in the amount of at least $3,500,000.  ([Docket No. 33] FAC, Ex. A, Bond Purchase Agreement § 1(a).)

ORIX (the "Purchaser") agreed to purchase Private Placement Broadband System Taxable Revenue Bonds, Series 2011A from LCHRA.  (FAC ¶ 15.)  The Bonds were to be issued pursuant to an Indenture of Trust between LCHRA (the "Issuer") and a trustee.  (Id.)  LCHRA was to lend the proceeds from the bond sales to LCM (the "Borrower") for the purpose of:

> (i) financing a portion of the cost of the Project not eligible to be paid from the RUS Loan or RUS Grant; (ii) funding a debt service reserve fund to secure payment of the Bonds; (iii) funding capitalized interest on the Bonds and RUS Loan during the construction period; and (iv) paying certain costs of issuance of the Bonds.

(Bond Purchase Agreement § 1(a).)

ORIX agreed to purchase a maximum principal amount of bonds not to exceed $6,250,000 at a true interest cost of not to exceed 15.0%.  (FAC ¶ 18; Bond Purchase Agreement § 2.)  The agreement also entitled ORIX to certain protection measures, including a subordinated lien and security interest, to ensure repayment.  (FAC ¶ 19.)  ORIX was to make payment for the bonds on an undetermined "Closing Date."  Delivery of the bonds was to take place on the Closing Date as well.  (Bond Purchase Agreement § 2.)  ORIX was to profit from the transaction by collecting interest on the bonds.

### a)      Conditions Precedent

The conditions precedent for the Purchaser, ORIX, to purchase the bonds are listed in Section 3 of the Bond Purchase Agreement.  The agreement states, "compliance with any . . . [condition] . . . may be waived or the time for performance extended by the Purchaser."  (Bond Purchase Agreement § 3.)  The conditions precedent for the bond Issuer, LCHRA, to close the transaction are

listed in Section 4 of the agreement.  The agreement states, "compliance with any . . . [condition] . . . may be waived or the time for performance extended by the Purchaser."  (Id. § 4.)

### b)      Termination

Section 5 lists the multiple conditions upon which the agreement can be terminated by the Purchaser.  (Bond Purchase Agreement § 5.)  Section 6 lists the condition upon which the agreement can be terminated by the Issuer or Borrower:

> This Agreement may be terminated in writing by the Issuer or the Borrower in the event that the Purchaser shall fail to accept delivery of the Bonds on the Closing Date upon tender thereof to DTC [Depository Trust Company] by the Issuer and delivery to the Purchaser of all documents required for closing and delivery of the Bonds.

(Id. § 6.)

Section 11 of the agreement provides for a termination fee: "In the event that the Borrower or Issuer terminates this Agreement to finance the Project with a lender or financial institution other than Purchaser, Borrower agrees to pay the Purchaser a termination fee equal to 10% of the stated principal amount of the bonds."  (Id. § 11.)

### 4.   Defendants' Alleged Anticipatory Breach/Breach of the Bond Purchase Agreement

Plaintiff asserts that Defendants represented that the Closing Date would need to occur by the end of February 2011 to meet the RUS deadline.  (FAC ¶ 22.) As the date was nearing, Plaintiff contends that it contacted Defendants to inquire about whether the supporting documentation, referenced in the agreement, had been completed.  Plaintiff alleges that Defendants represented that RUS had granted them an extension until the end of April 2011 and assured Plaintiff that there was there was nothing to worry about.  (Id.)

Plaintiff asserts that after being assured that there was no cause for concern, it uncovered a press release dated February 8, 2011.  (FAC ¶ 23.)  The press release explained that the Lake County Board had approved the investment of $3.5 million of its own funds into the project, thus eliminating its need for subordinate revenue bonds.  (FAC ¶ 23; FAC, Ex. B, Press Release.)  In the press release, Defendants expressed that the reasons for using county money instead of bond revenue were "RUS discomfort" with the financing structure, and the county's discomfort with "the high costs associated with the bonds." (Press Release.)

Plaintiff asserts that Defendants never informed it that RUS had expressed discomfort with the terms of the Bond Purchase Agreement, that the Lake County Board had approved direct investment of county funds, or that Defendants had no intention of performing under the Bond Purchase Agreement.  (FAC ¶ 25.)  Plaintiff further asserts that upon finding the press release, it contacted Defendants to discuss RUS's discomfort and to suggest "creative ways to restructure the Bond Purchase Agreement or, alternatively, to negotiate a termination fee or damages in good faith."  (Id. ¶ 26.)

In a letter dated February 23, 2011, Defendants notified Plaintiff that they were "not in a position to perform the Bond Purchase Agreement" because the "RUS rejected, in full cloth, the transaction described in the Bond Purchase Agreement as a means of providing the Matching funds."  (FAC ¶ 27; FAC, Ex. C.)

Plaintiff asserts that Defendants have not provided reasons or written evidence that RUS rejected the terms of the Bond Purchase Agreement.  (FAC ¶ 28.)  Also, Plaintiff asserts that Defendants have not provided information regarding the funds the county will use to make its direct investment in the project.  (Id. ¶ 29.)

Plaintiff alleges that Defendants have commenced the project without issuing the bonds.  (FAC ¶ 30.)  Plaintiff further alleges that Defendants received a $500,000 advance from RUS to be used to further the project.  (Id.)  Plaintiff asserts that Defendants are still obligated to perform under the Bond Purchase Agreement, and have refused to so perform.  It claims that Defendants' breach of the agreement caused it to suffer $4.8 million in lost profits.

**B.     Procedural History**

On March 3, 2011, ORIX filed a complaint against LCHRA and LCM in Texas state court.  Defendants removed the case to federal court where it was dismissed for lack of personal jurisdiction.  <u>Orix Pub. Fin., LLC v. Lake County Housing & Redevelopment</u>, Civil Action No. 3:11–CV–0678–D, 2011 WL 3628958 (N.D. Tex. Aug. 16, 2011).  On November 3, 2011, Plaintiff filed suit against the same Defendants in this Court.  Plaintiff then sought leave to amend its Complaint, which was granted.  The First Amended Complaint alleges Count One: Breach of Contract; and Count Two: Declaratory Judgment.

Plaintiff alleges that the Bond Purchase Agreement is an existing and enforceable contract and that Defendants have anticipatorily and materially breached it by refusing to perform before performance was due.  (FAC ¶ 37.)

Additionally or alternatively, Plaintiff argues that it is entitled to a termination fee pursuant to Section 11 of the Bond Purchase Agreement.  (Id. ¶ 38.)  Plaintiff seeks a declaratory judgment determining whether Defendants repudiated and/or breached the Bond Purchase Agreement, whether the Bond Purchase Agreement has been terminated, and whether Plaintiff is entitled to a termination fee under Section 11 of the Bond Purchase Agreement.  (Id. ¶ 41.)

Defendants now move to dismiss Plaintiff's First Amended Complaint in its entirety.

## III.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

## B.     Anticipatory Breach Standard

Anticipatory breach occurs "[w]here one party to an executory contract, before the performance is due, expressly renounces the same and gives notice that he will not perform it." Space Center, Inc. v. 451 Corp., 298 N.W.2d 443, 450 (Minn. 1980) (citation omitted).  If this happens, "his adversary, if he so elects, may treat the renouncement as a breach of the contract and at once bring an action for damages." Id. (citation omitted).  However, "[t]he refusal to perform must in effect be an unqualified renunciation or repudiation of the contract.  A mere refusal, not of that character, will not obviate the necessity of a tender." Id. (citation omitted).

## C.     Whether Conditions Precedent Were Met

Defendants assert that Plaintiff fails to state a claim because there can be no anticipatory breach or breach when a condition precedent has not occurred.

### 1.    Federal Rule of Civil Procedure 9(c) Standard Regarding Pleading Satisfaction of Conditions Precedent

Federal Rule of Civil Procedure 9(c) provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."  A complaint that "tracks the language of this Rule" is sufficient.  Fitz-Patrick v. Commonwealth Oil Co., 285 F.2d 726, 729 (5th Cir. 1960) (accepting as sufficient the complaint's allegation that "all conditions precedent have been performed or have occurred").  Thus, the Court should not dismiss a complaint that generally avers that all condition precedents have been performed unless "the complaint demonstrate[s] on its face [that a condition precedent did not occur]."  Id. at 730.

### 2.    Whether Plaintiff's Claim that all Conditions Precedent Have Occurred Survives Rule 9(c) Pleading Requirements

ORIX has clearly alleged facts to support a claim of anticipatory breach by pleading that Defendants issued a press release stating that they would self-fund rather than issuing subordinate revenue bonds and that ORIX received a letter from Defendants' counsel stating that Defendants were not in a position to

perform the Bond Purchase Agreement.  It has further alleged breach by alleging

that Defendants have gone forth with the project without issuing the bonds, even

though RUS has approved the first advance, and have refused to perform under

the Bond Purchase Agreement.  At this early stage of the proceedings, ORIX is

permitted to plead alternative theories of breach and anticipatory breach.  See

Fed. R. Civ. P. 8(d).

Defendants argue that breach or anticipatory breach cannot occur where a

contract requires third-party approvals that have not been obtained, and where

such approvals are beyond the control of the parties, citing Friends of the

Riverfront v. City of Minneapolis, 751 N.W.2d 586,593 (Minn. Ct. App. 2008).

Friends of the Riverfront is inapplicable.  Friends of the Riverfront involved a

situation where the breach could only occur if the city went forward with a

construction project and the city could not go forward unless certain other

approvals were granted.  The city could not, and therefore did not, make an

unconditional repudiation of the leases in question by constructing an athletic

facility because the city could not begin construction unless certain approvals

were granted.  In contrast, here, Defendants argue that certain third-party – RUS

– approval was necessary in order to comply with (and not breach) the

agreement.   In <u>Friends of the Riverfront</u>, the city had to act in order to breach,

and it could not act absent certain approvals that it had not yet obtained.   Here,

the situation is reversed.   Defendants can act, and fulfill the contract, with RUS

approval.   In order to breach, Defendants need to "not act" and they can "not

act" with or without RUS approval.   In the First Amended Complaint, Plaintiff

alleges that Defendants explicitly stated they would not perform under the Bond

Purchase Agreement.   Thus, Defendants made an unconditional repudiation,

anticipatorily breaching the agreement.

The Court holds that ORIX has adequately pled that all conditions

precedent were met.   In its First Amended Complaint, ORIX explicitly alleges:

"All conditions precedent to ORIX's claims for relief have been performed or

have occurred."   (FAC ¶ 45.)   So long as ORIX has generally alleged that the

conditions precedent have occurred, it is "not required to prove its compliance

with conditions precedent to satisfy its pleading obligations."   <u>Weitz Co. LLC v.</u>

<u>Alberici Constructors, Inc.</u>, No. 8:08CV199, 2009 WL 115980, at *3 (D. Neb. Jan.

16, 2009).   ORIX has satisfied the Rule 9(c) standard for pleading conditions

precedent.   <u>See</u> <u>Cummins Law Office, P.A. v. Norman Graphic Printing</u>, 826 F.

Supp. 2d 1127, 1129 (D. Minn. 2011) (holding that plaintiff's allegation that "any

conditions precedent to its right to demand performance . . . have been performed" was sufficient under the Rule 9(c) pleading standard).

The Court further holds that ORIX does not plead facts that demonstrate, on their face, that any conditions precedent were <u>not</u> met.  In its First Amended Complaint, Plaintiff does allege that it uncovered a press release stating that RUS had expressed discomfort with the Bond Purchase Agreement.  Plaintiff does not, however, explicitly allege that there was no federal funding available at the time Defendants repudiated the agreement.  Plaintiff does not allege that RUS actually disapproved of the Bond Purchase Agreement.  Plaintiff further asserts that RUS did approve an advance for the project and that Defendants commenced the project without issuing the bonds to Plaintiff.  (<u>Id.</u> ¶ 30.)  Plaintiff has therefore not pleaded facts that show the condition precedent was <u>not</u> met.

**D.     Whether the Bond Purchase Agreement Expired by its Terms, Discharging the Parties' Duty to Perform**

The Court rejects Defendants' claim that the First Amended Complaint must be dismissed because the Bond Purchase Agreement expired by its own terms in February 2011, so the parties' duties to perform were discharged when they did not close by that date.

In the text of the Bond Purchase Agreement, the Closing Date is left undetermined:

> Payment for the Bonds shall be made to the Issuer or its order in federal funds or other immediately available funds upon satisfaction of the conditions set forth in Section 3 and 4 hereof.  The date and time of such payment and delivery are herein called the "Closing Date."

(Bond Purchase Agreement § 2.)

Defendants rely on an attachment to the Bond Purchase Agreement, "Attachment A: Terms of Bonds," ([Docket No. 33] at 12) to assert that the contract expired on February 1, 2011.  This attachment to the agreement lists February 1, 2011 as the bond date and the delivery date.  Defendants argue that because the parties had not closed by that date, the contract expired and Defendants were discharged from performing under its terms.

Contract interpretation is a question of law.  Bus. Bank v. Hanson, 769 N.W.2d 285, 288 (Minn. 2009).  "The plain and ordinary meaning of the contract language controls, unless the language is ambiguous," and "[l]anguage is ambiguous if it is subject to more than one reasonable interpretation."  Id.  Also, all of the language in the instrument must be given effect.  Id.  When contractual language is ambiguous and "construction depends on extrinsic evidence . . .

there is a question of fact for the jury." <u>Turner v. Alpha Phi Sorority House</u>, 276

N.W.2d 63, 66 (Minn. 1979).

In order for a contract to expire by its own terms, the contract must

expressly state that a party's obligations terminate if performance is not

completed by a specific date or in a timely manner.  <u>See</u> <u>Schumann v. Mark</u>, 28

N.W. 927, 928 (Minn. 1886) (stating that where a contract explicitly requires

timely performance, failure to perform on time causes the contract to expire).

The Bond Purchase Agreement does not specify a termination date.  On its face,

the Closing Date depends upon the satisfaction of the conditions set forth in

Sections 3 and 4, and Sections 3 and 4 explicitly state that "the time for

performance [may be] extended by the Purchaser [ORIX]."  Additionally,

Defendants allegedly represented to Plaintiff that it was not necessary to close

until April 2011.

The "Terms of Bonds" attachment to the agreement lists the bond date and

delivery date as February 1, 2011, but the definition of "Closing Date" does not

explicitly incorporate the terms from Attachment A.  Moreover, Plaintiff alleges

that "ORIX understood from Lake County that the Closing Date under the Bond

Purchase Agreement needed to occur by the end of February 2011."  (FAC ¶ 22.)

Plaintiff further alleges that "Lake County's agents advised ORIX that RUS had granted an extension until the end of April 2011 and reassured ORIX that there was no need to be concerned."  (Id.)

At this stage of the lawsuit, the Court cannot say that, as a matter of law, the agreement had expired on February 1, 2011 such that Defendants were relieved of any obligations under the agreement on that date.

### E.   Whether Plaintiff's Request for a Termination Fee Is a Claim, and if so, Whether It Survives

In its First Amended Complaint, Plaintiff alleges: "Additionally, or in the alternative, Lake County has terminated the Bond Purchase Agreement. Pursuant to Section 11 of the Bond Purchase Agreement, ORIX is entitled to a termination fee equal to 10% of the stated principal amount of the Bonds."  (FAC ¶ 38.)  Section 11 provides: "In the event that the Borrower or Issuer terminates this Agreement to finance the Project with a lender or financial institution other than Purchaser, Borrower agrees to pay the Purchaser a termination fee equal to 10% of the stated principal amount of the Bonds."  (Bond Purchase Agreement § 11.)

Defendants argue that because Plaintiff has failed to allege that Defendants terminated the Bond Purchase Agreement in order to finance with another

lender or financial institution, Plaintiff has failed to state a claim upon which relief can be granted.  Defendants also assert that because they decided to self-fund the project, they did not trigger the termination fee under the terms of Section 11 because the termination fee is only triggered if Defendants borrow from an entity other than Plaintiff.

The termination fee paragraph is not pled as a separate count or claim in the First Amended Complaint, so the Court will not dismiss it.  Moreover, based on the allegations in the First Amended Complaint, ORIX does not know the source of the funds used by Defendants, so it is not clear whether or not Defendants used a lender or financial institution.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Defendants' Motion to Dismiss [Docket No. 28] is **DENIED**.


Dated:  October 31, 2012                                  s/ Michael J. Davis
                                                         Michael J. Davis
                                                         Chief Judge
                                                         United States District Court